1
2
3
4
5
6                    **UNITED STATES DISTRICT COURT**
7
                    **SOUTHERN DISTRICT OF CALIFORNIA**
8

| CRYPTO ASSET FUND, LLC, et al., | CASE NO. 19cv1869-LAB (MDD) |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS [Dkt. 9];** |
| vs. | |
| MEDCREDITS, INC., et al., | |
| Defendants. | **ORDER GRANTING MOTION TO COMPEL [Dkt. 9];** |
| | **ORDER DENYING MOTION FOR ATTORNEYS' FEES AND COSTS [Dkt. 9]** |

        Plaintiffs Crypto Asset Fund, LLC ("CAF"), Timothy Enneking, and Kyle Chaykowski brought this suit in September 2019, alleging that Defendants violated an array of state and federal laws by soliciting and inducing Plaintiffs to invest in a "token sale" related to Defendants' new medical platform, MedCredits.  Currently before the Court is Defendants' Motion to Dismiss the Complaint for Lack of Personal Jurisdiction and Failure to State a Claim, or alternatively, to Compel the Plaintiffs to Arbitration.  As discussed below, the Court finds that it has personal jurisdiction over some of the Defendants, but that all of Plaintiffs' claims are subject to arbitration.

                              **BACKGROUND**

**1.      Plaintiffs' Investments**

        "Token Sales" and "Initial Coin Offerings" are sales and offerings of "digital assets conducted by organizations using distributed ledger or blockchain technology[.]"

Complaint ("Compl."), Dkt. No. 1, at ¶ 15. In 2017, Defendants James Todaro and MedCredits, Inc. began planning an Initial Coin Offering for the "MEDX token," a blockchain-based technology that "efficiently and privately connect[s] patients seeking medical care with doctors worldwide." *Id.* at ¶ 16; Todaro Decl., Dkt. 9-9, at ¶ 5. Defendants James Todaro, Joseph Todaro, John Todaro, Moshe Praver, and Ryan Cody are each executive officers and/or directors of MedCredits and its sister company, Blocktown Holdings LP.

Plaintiff Timothy Enneking and Kyle Chaykowski are officers of Crypto Asset Fund, LLC. In late 2017, Plaintiff Tim Enneking and Defendant James Todaro began discussions about a potential collaboration on the MEDX token. The parties dispute the nature of this collaboration. Plaintiffs claim that Todaro "solicit[ed] and induce[d] Mr. Enneking to invest" in MEDX. Compl. at ¶ 17. Defendants, on the other hand, allege that Enneking approached *them* in early 2017 to inquire about whether the parties could work together. *See* Todaro Decl. ¶ 12. The exact details are not especially relevant at this stage. What is relevant is that, in January 2018, Enneking (on behalf of CAF) purchased "$1.3 million worth of MEDX tokens" from MedCredits. Compl. at ¶ 26. Chaykowski, after being introduced to Todaro by Enneking, individually purchased another $50,000 worth of MEDX tokens, and Enneking signed on as an advisor with MedCredits. *Id.* Plaintiffs claim that Defendants, having accepted their money, then abandoned the MEDX platform and never completed the MEDX token sale or distribution. *Id.* It is undisputed that Defendants did not return Plaintiffs' investment.

On July 12, 2019, Plaintiffs' counsel sent a letter to Defendants informing them that Plaintiffs intended to file suit. *See* Miller Decl., Dkt. 9-2, at ¶ 3. On August 2, 2019, counsel for the parties conducted a teleconference and discussed, among other things, the arbitration portions of the Seed Round Agreement that governed Plaintiffs' purchase of MEDX tokens. *Id.* at ¶ 5. On September 18, 2019, Plaintiffs' counsel sent Defendants' counsel a draft complaint containing 20 purported claims and indicated that he intended to file the complaint in the coming days. *Id.* at ¶ 6. Before Plaintiffs could file that

Complaint, however, MedCredits filed a Request for Arbitration with the International Chamber of Commerce ("ICC") on September 25, 2019. *Id.* at ¶ 7. Two days later, on September 27, 2019, Plaintiffs' counsel filed the complaint in this case.

### 2. The Arbitration Agreement

Plaintiffs' purchase of MEDX tokens was governed by the "Terms and Conditions Regarding MEDX Seed Round Token Sale" ("Seed Round Agreement"). *See* Todaro Decl., Ex A. Enneking signed this document on January 23, 2018, shortly before he transmitted 1340 Ethereum coins[1] to MedCredits on behalf of CAF. *See* Todaro Decl. at ¶ 13. A few days later, on February 8, 2018, Chaykowski also "review[ed] the Seed Round Agreement, checked a box to accept its terms and conditions" and then transferred approximately 63 Ethereum coins to CAF. *Id.* at ¶ 14.

The Seed Round Agreement contains a broad arbitration provision requiring that any disputes "arising from or related to" the Agreement be arbitrated individually in front of the ICC. *See* Todaro Decl., Ex A at § 17.1. In relevant part, that provision provides:

> Except for any disputes, claims, suits, actions, causes of action, demands or proceedings (collectively, "**Disputes**") in which either Party seeks injunctive or other equitable relief for the alleged unlawful use of intellectual property, including, without limitation, copyrights, trademarks, trade names, logos, trade secrets or patents, you and Company (i) waive your and Company's respective rights to have any and all Disputes arising from or related to these T&Cs resolved in a court, and (ii) waive your and Company's respective rights to a jury trial. Instead, you and Company agree to arbitrate Disputes through binding arbitration . . . .

*Id.* The agreement delegates to the arbitrator any disputes related to arbitrability, and it further requires that an arbitration be conducted on an individual basis. *Id.* at §§ 17.2, 17.6.

/ / /

---

[1] Ethereum is a cryptocurrency. According to Plaintiffs, 1340 Ethereum coins were worth approximately $1,300,000 at the time of the investment. Compl. at ¶ 26.

**DISCUSSION**

Defendants MedCredits, James Todaro, and Blocktown bring several motions. First, Defendants move to dismiss the case against them for lack of personal jurisdiction and for failure to state a claim. In the alternative, Defendants move to compel arbitration and stay litigation based on the Seed Round Agreement's arbitration provision. Finally, Defendants move for an award of attorneys' fees and costs under 28 U.S.C. § 1927. Individual Defendants Joseph Todaro, John Todaro, and Moshe Praver—who were first served in this case after the other Defendants filed these motions—join in those motions. *See* Notice of Joinder, Dkt. 22.

**1.     Defendants' Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants move to dismiss for lack of personal jurisdiction, arguing that their contacts with the state of California are insufficient to permit this Court to exercise jurisdiction over them. The Court agrees in part and disagrees in part.

When a defendant moves to dismiss for lack of personal jurisdiction, the burden of proving personal jurisdiction rests with the plaintiff. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Personal jurisdiction over each defendant must be assessed individually. *Calder v. Jones*, 465 U.S. 783, 784 (1984). Courts may not assume the truth of allegations in a pleading when those allegations are contradicted by affidavit. *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977).

Specific personal jurisdiction[2] in the Ninth Circuit is analyzed through a three-prong test. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The first prong requires that Defendants have purposefully directed their activities at the forum state or purposefully availed themselves of the benefits of the forum state. *Id.* The

_____

[2] Neither party meaningfully contends the Court has general personal jurisdiction over any of the Defendants—two Delaware corporations headquartered in Michigan and a handful of individuals residing in states other than California—so the Court limits its analysis to specific personal jurisdiction.

second prong requires that Plaintiffs' claims arise out of the Defendants' forum-related activity. *Id.* The third prong requires that the exercise of personal jurisdiction be reasonable. *Id.* The first prong follows an effects test, under which the defendant must commit an intentional act, the act must be expressly aimed at the forum state, and the act must cause harm that the defendant knows is likely to be suffered in the forum state. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The second prong must satisfy a "but for" causation test. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 474 (9th Cir. 1995)

A defendant's status as an employee or officer of a corporation does not shield them from liability for intentionally tortious acts. *Calder*, 465 U.S. at 790. But mere association with a corporation that causes injury is not sufficient to permit personal jurisdiction without a further reason for the court to disregard the corporate form. *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989).

Applying *Schwarzenegger*'s three-part test, the Court finds it has specific personal jurisdiction over James Todaro and MedCredits. As discussed above, the parties disagree about the origins of the parties' relationship. What's clear, though, is that James Todaro, on behalf of MedCredits, corresponded heavily with the Plaintiffs over multiple months in the spring of 2018 in hopes that Plaintiffs would invest in his new platform, MEDX. He did this presumably knowing that Plaintiffs lived in California and that any harm from the transaction falling through would necessarily be felt there. Indeed, Defendants note that the MEDX token sale was a "seed round to a limited number of investors," not a widespread public offering. *See* Reply, Dkt. 20, at 9; Todaro Decl. at ¶ 8. Were this a blanket offering open to any interested party in the United States, perhaps there would be a better argument that the Defendants could not foresee specific harm being felt in California. But given the limited (and personal) nature of this transaction, it was imminently foreseeable who would feel the harm if the deal fell through and where that harm would be felt. The Court therefore finds it has specific personal jurisdiction over James Todaro and MedCredits because they purposefully directed their

activities at California, Plaintiffs' claims arise out of that forum-related activity, and the exercise of jurisdiction is reasonable.

The same cannot be said for the remaining Defendants. Again, "mere association with a corporation that causes injury is insufficient to permit personal jurisdiction without a further reason for the court to disregard the corporate form." *Davis*, 885 F.2d at 520. Although Plaintiffs could have shown—through affidavits or other supporting materials—how the remaining Defendants are subject to personal jurisdiction, they haven't attempted to make such a showing. As pled, the only way these Defendants can be said to have targeted the state of California is by virtue of their status as officers of—or, in Blocktown LP's case, as an associated entity of—Medcredits. Because that is insufficient as a matter of law, the Court lacks specific personal jurisdiction over these Defendants. Plaintiffs' claims against Joseph Todaro, John Todaro, Moshe Praver, Ryan Cody[3], and Blocktown LP are **DISMISSED WITHOUT PREJUDICE**.

### 2. Defendants' Motion to Compel

Defendants next argue that the Court must compel Plaintiffs to arbitrate their claims based on the arbitration provision found in the Seed Round Agreement. The Court agrees.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, reflects a strong public policy in favor of arbitration. The FAA applies to any "contract evidencing a transaction involving commerce," and provides that any arbitration agreement within its scope "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. "A party aggrieved by the alleged . . . refusal of another to arbitrate" may petition any federal district court for an order compelling arbitration. *Id.* at § 4. Congress enacted the FAA to overcome "widespread judicial hostility to arbitration agreements," and to ensure that courts enforce valid agreements to arbitrate. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339

---

[3] Although Defendant Ryan Cody is not listed in the Notice of Joinder filed by Defendants Joseph Todaro, John Todaro, and Moshe Praver, the same analysis applies to him.

(2011). "The FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration'" if it concludes the parties have agreed to arbitrate the dispute. *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original)). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore*, 673 F.3d at 955 (citation omitted). If the answer to both questions is yes, the court is required to enforce the arbitration agreement. *Id.*

Further, recent Supreme Court precedent makes clear that parties may delegate to the arbitrator even these threshold issues of arbitrability—that is, whether the case is subject to arbitration at all. "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). In this situation, the court first "determines whether a valid arbitration agreement exists." *Id.* If it does, "and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue." *Id.*

There's little doubt valid arbitration agreements exist here. As to Enneking, Defendants have submitted an executed copy of the Seed Round Agreement that was signed on January 23, 2018 by James Todaro (on behalf of MedCredits) and Timothy Enneking (on behalf of CAF). *See* Todaro Decl., Ex. A.[4] The beginning of that agreement

---

[4] Plaintiffs raise various evidentiary objections to James Todaro's declaration. *See* Dkt. 16-8. The Court relies on Todaro's declaration only as necessary to authenticate the arbitration agreements. As an officer of Medcredits, Todaro has the personal knowledge to testify about MedCredits' practices and policies, as well as to authenticate the various documents attached to his declaration. *See* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Barthelemy v. Air Lines Pilots Ass'n,* 897

explicitly provides, "BY CONTRIBUTING TO MEDREDITS, INC FOR THE PURCHASE OF MEDX TOKENS ('MEDX') DURING THE 'SEED ROUND TOKEN SALE', YOU WILL BE BOUND BY THESE T&Cs AND ALL TERMS INCORPORATED HEREIN BY REFERENCE. . . . THESE T&Cs CONTAIN PROVISIONS WHICH AFFECT YOUR LEGAL RIGHTS." *Id.* Section 17 of the Seed Round Agreement waives any right by the parties to have "[d]isputes arising from or related to these T&Cs resolved in a Court." *Id.* "Instead, you and Company agree to arbitrate Disputes through binding arbitration." *Id.* Given this language, the Court has little difficulty concluding that there is a valid arbitration agreement between MedCredits and Enneking.

Whether there is a valid arbitration agreement between MedCredits and Chaykowski is less straightforward. Because Chaykowski's contribution was significantly smaller than Enneking's—roughly $50,000 versus $1,300,000—MedCredits apparently did not execute a personal agreement with him. Instead, when Chaykowski expressed interest in contributing, Todaro sent him instructions requiring Chaykowski to (1) visit a website (https://medcredits.io/seedround); (2) agree to the terms of the token sale on that site; (3) enter his email address to receive an Ethereum "deposit address"; and (4) transfer the Ethereum deposit. *See* Todaro Decl. at ¶ 14; Exs. E, F. As such, even if there is no copy of an executed agreement, Todaro's testimony is that Chaykowski could not have contributed money to MedCredits without first accepting the same Seed Round Agreement that Enneking signed. *Id.* It is not unusual for a defendant to be unable to produce "executed" versions of online agreements. Indeed, so long as there is "admissible evidence that all users during the relevant time period were required to affirmatively agree to the Terms of Use," it is irrelevant that there is no formal document. *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. 2015); *see also Roberts v. Obelisk, Inc.*, 2019 WL 1902605, at *6 (S.D. Cal. 2019) (rejecting a similar argument that

_____

F.2d 999, 1018 (9th Cir. 1990) (A declarant's personal knowledge may be inferred from a declarant's "position[ ] and the nature of their participation in the matters."). These objections are therefore **OVERRULED**.

the defendant had failed to produce executed copies of the online terms and conditions). The evidence submitted by Todaro is that Chaykowski could not have submitted his Ethereum payment without first agreeing to the same Seed Round Agreement terms. *See* Todaro Decl. at ¶ 9 ("All supporters of the project were required to agree to the terms and conditions of the Seed Round Agreement[,] . . . which included an arbitration clause captioned 'Dispute Resolution by Arbitration,' which was identical in each individual supporter's Seed Round Agreement."). The Court therefore has no difficulty concluding that a valid arbitration agreement exists between Chaykowski and the Defendants.

The Court also finds that the arbitration agreements signed by Enneking and Chaykowski delegate the threshold issue of arbitrability to the arbitrator. Section 17.6 of the Seed Round Agreement grants the arbitrator the "exclusive authority and jurisdiction to make all procedural and substantive decisions regarding a dispute, including the determination of whether a [d]ispute is appropriate for arbitration." Todaro Decl., Ex A at § 17.6. This language evinces an unmistakable intent to delegate the issue of arbitrability to the arbitrator. The Court therefore "has no power to decide the arbitrability issue." *Schein*, 139 S. Ct. at 529.

Plaintiffs make a variety of arguments as to why they cannot be forced to arbitrate, which the Court will address in turn. First, Plaintiffs argue, they cannot be forced to arbitrate because there is a third agreement at issue here—the Advisory Agreement between Enneking and MedCredits—that does not contain an arbitration provision. That's true enough, but it's also (for all practical purposes) irrelevant. Plaintiff's Complaint contains twenty causes of action and none is premised solely on the Advisory Agreement. The only two claims that explicitly reference the Advisory Agreement—Count 13 for Breach of Contract and Count 14 for Breach of the Covenant of Good Faith and Fair Dealing—reference that agreement only as an afterthought. *See* Compl. at ¶ 125 ("Pursuant to MedCredits' offer to sell MEDX tokens, Plaintiffs and MedCredits entered into agreements whereby Plaintiffs purchased MEDX tokens from Defendants. *Mr. Enneking also entered into an agreement to provide advisory services for MedCredits*.)

(emphasis added); Compl. at ¶ 131 ("MedCredits breached the covenant of good faith and fair dealing when it failed to build and launch the MEDX platform, failed to release and distribute MEDX tokens to investors including Plaintiffs, and *failed to compensate Mr. Enneking for his advisory services.*") (emphasis added). As such, even assuming the Advisory Agreement does not contain an arbitration clause, any claim premised on that agreement is *also* premised on the Seed Round Agreement, which does contain an arbitration clause. The lack of an arbitration agreement in the Advisory Agreement doesn't affect the arbitrability of Plaintiffs' claims.

Plaintiffs next argue that Defendants failed to comply with a requirement in the Seed Round Agreement that they provide notice to the other side before filing the arbitration demand. *See* Todaro Decl., Ex. A at § 17.4. According to Plaintiffs, Defendants' failure to provide notice means that any arbitrator ultimately appointed by the ICC will lack jurisdiction over the parties. *See* Opp. at 7. This argument proves too much. Whether the Court may enforce the arbitration agreement does not turn on whether Defendants have to this point complied with that agreement's provisions. It is enough that there is an arbitration agreement that manifests an intent to arbitrate. Indeed, if the current iteration of Defendants' arbitration demand is procedurally unsound, there seems to be no issue with them re-filing the demand after complying with the applicable notice rules.

Next, Plaintiffs submit that the arbitration agreements are "unenforceable on grounds of fraud, unconscionability, and public policy." Opp. at 10. Specifically, they argue, they would not have agreed to the Seed Round Agreement but for Defendants' misrepresentations that they planned to develop and utilize the MEDX token. The agreement was therefore procured by fraud. Relatedly, Plaintiffs argue, the agreement is unconscionable because the Seed Round Agreement was a "contract of adhesion" presented on a take-it-or-leave-it basis that generated one-sided result. Putting aside the fact that both parties were sophisticated entities, these various arguments are not challenges the arbitration provision specifically, but challenges to the Seed Round

Agreement as a whole.  "[A]s a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract, [and] unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance."  *Buckeye Check Cashing, Inc. v. Cadegna,* 546 U.S. 440, 445–46 (2006).  Because Plaintiffs' arguments concerning fraud and unconscionability go to the validity of the contract as a whole, the arbitrator should consider those arguments in the first instance.

Finally, Plaintiffs argue that Section 14 of the Securities Act and Section 29(a) of the Exchange Act exempt their federal securities claims from arbitration.  While it's true that the Securities and Exchange Commission generally refuses to approve initial public offerings containing arbitration provisions, Plaintiffs have identified no case law (or any other authority for that matter) suggesting that a party may rely on these provisions to invalidate an existing arbitration clause.  And, again, there is nothing precluding the arbitrator from considering this argument to the extent it has teeth.

Having concluded that Plaintiffs' claims should be referred to arbitration, that leaves only the question of remedy.  Section 3 of the FAA provides that a court must stay litigation "upon being satisfied that the issue" is "referable to arbitration" under the "agreement."  As such, this action is **STAYED** pending the parties' arbitration.  The case won't remain stayed forever, though.  The parties are **ORDERED** to proceed immediately to arbitration[5] and to a submit joint status report to the Court every sixty days, with the first status report due on __June 1, 2020__.  The Court expects the parties to arbitrate their claims expeditiously.  Failure to do so will result in dismissal and possible sanctions.

---

[5] Because the Court has personal jurisdiction only over James Todaro and MedCredits, it lacks the authority to bind the remaining Defendants.  That said, the Ninth Circuit's opinion in *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128 (9th Cir. 2013), makes clear that non-signatories to an arbitration agreement may compel arbitration where the claims against them are "intimately founded in and intertwined with" the underlying contractual obligations, as they are here.  The Court would therefore reach the same conclusion assuming it did have jurisdiction over these parties.

### 3.    Defendants' Remaining Motions

Defendants bring two other motions.  First, they move to dismiss Plaintiffs' Complaint for failure to state a claim.  Second, they argue that Plaintiffs' decision to file this case despite being aware their claims were subject to arbitration warrants the imposition of attorneys' fees and costs under 28 U.S.C. § 1927.

Because the Court has already determined Plaintiffs' claims should be referred to arbitration, the Court lacks the ability to weigh in on whether the claims in Plaintiffs' Complaint are sufficient as a matter of law.  Defendants' Motion to Dismiss for Failure to State a Claim is **DENIED AS MOOT**.  Further, based on the record before it, the Court cannot find that Plaintiffs' litigation conduct to this point warrants the imposition of fees or costs under 28 U.S.C. § 1927, so that motion is likewise **DENIED**.

### CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED IN PART AND DENIED IN PART**.  All Defendants other than James Todaro and MedCredits are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.  Defendants' Motion to Compel Arbitration is **GRANTED** as to the two remaining Defendants, and this case is **STAYED**.  This stay is subject to the requirement that the parties submit regular status reports.  Defendants' Motion to Dismiss for Failure to State a Claim is **DENIED AS MOOT**.  Defendants' Motion for Attorneys' Fees and Costs is **DENIED**.

**IT IS SO ORDERED**.

Dated: March 30, 2020

_____
**HONORABLE LARRY ALAN BURNS**
Chief United States District Judge